IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREA JAMISON, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | **COMPLAINT AND TRIAL BY JURY** |
| | ) | **DEMAND** |
| vs. | ) | |
| | ) | |
| KOVITZ SHIFRIN NESBIT, A | ) | |
| PROFESSIONAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## NATURE OF ACTION

1.      Plaintiff Andrea Jamison ("Plaintiff") brings this action against Defendant Kovitz Shifrin Nesbit, A Professional Corporation ("Defendant") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## JURISDICTION, VENUE, AND STANDING

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendant transacts business in this district.

4.      Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016) (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992)).

5.      "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)).  Thus, a debt collector's breach of a right afforded a consumer under the FDCPA causes an injury in fact for Article III standing, even where the harm may be intangible.  *See id.*; *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016).

## THE FAIR DEBT COLLECTION PRACTICES ACT

6.      Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

7.      To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute [and] proof of one violation is sufficient to support summary judgment for plaintiffs on their federal claim."  *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1046 (W.D. Wis. 2002).

8.      In order to offer the greatest protections to consumers, "the FDCPA is a strict liability statute – a collector 'need not be deliberate, reckless, or even negligent to trigger liability."  *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009); *see also Anderson v. Credit Bureau Collection Services, Inc.*, 422 Fed. Appx. 534, 539 (7th Cir. 2011) ("This means [Plaintiff] is entitled to sue to enforce [the FDCPA's] provisions, even the 'highly technical' ones . . .").

9.      "Because the FDCPA is designed to protect consumers, it is liberally construed in favor of consumers to effect its purpose." *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1040 (N.D. Ill. 2008).

10.     "[C]laims against debt collectors under the FDCPA are to be viewed through the eyes of the 'unsophisticated consumer' . . . the standard is low, close to the bottom of the sophistication meter." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996); *see also Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994) ("an unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness.").

## PARTIES

11.     Plaintiff is a natural person who at all relevant times resided in the State of Illinois, Calument City, Cook County.

12.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13.     Defendant is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

14.     Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

15.     Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed or due a creditor other than Defendant—namely, Park of River Oaks Condominium Association 1B (the "Creditor").

16.     Plaintiff's alleged obligation arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for

personal, family, or household purposes—namely, residential condominium association fees (the "Debt," or the "account").

17.     Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

18.     Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

19.     The Creditor retained Defendant to collect the Debt from Plaintiff on its behalf.

20.     As of September 30, 2015, Plaintiff owed the Creditor a total of $1,867.10 on the Debt.

21.     Plaintiff paid Defendant the $1,867.10.

22.     Plaintiff then owed a $0.00 balance for any and all charges accruing on or before September 30, 2015.

23.     For the months of October and November, 2015, the Creditor assessed monthly assessments, of $270.89 each, and late fees, of $25.00 each, which totaled $591.78.

24.      That amount too was paid, and so Plaintiff was caught up on the Debt through November 30, 2015.

25.     On November 30, 2015, Plaintiff paid $300 on the Debt.

26.     This payment covered the monthly assessment for December 2015 of $270.89, and so Plaintiff was left with a $29.11 credit to her account.

27.     Beginning January 1, 2016, the Creditor's regular monthly assessment changed to $289.85.

28.     The regular monthly assessment of $289.85 comes due at the beginning of each month from January 1, 2016 to present.

29.     On or about January 7, 2016, Plaintiff paid $270.89 on the Debt.

30.     This left Plaintiff with a credit of $10.05 on the account.

31.     In February 2016, in addition to the regular assessment of $289.85, the Creditor assessed a $25.00 late fee, because payment was not made by the 15th.

32.     On February 23, 2016, Plaintiff paid $315.00 on the Debt.

33.     This left Plaintiff with a credit of $10.20 on the account.

34.     In March 2016, the Creditor assessed the regular $289.85 assessment plus a $25.00 late fee.

35.     On March 29, 2016, Plaintiff paid $315.00 on the Debt.

36.     This left Plaintiff with a credit of $10.35 on the account.

37.     On April 18, 2016, Plaintiff made two separate payments of $315.00.

38.     Subtracting the April assessment, this left Plaintiff with a credit of $350.50 on the account.

39.     On May 12, 2016, Plaintiff paid $289.00 on the Debt.

40.     This left a credit of $349.65 on the account.

41.     On June 15, 2016, Plaintiff paid a total of $569.00 on the account.

42.     This left Plaintiff with a credit of $628.80 on the account.

43.     On July 1, 2016, the $289.85 regular assessment came due.

44.     Although Plaintiff had a credit to cover the assessment, the Creditor assessed a $25.00 late fee.

45.     Because Plaintiff had a sufficient credit, this late fee should not have been charged.

46. Subtracting the July 1 assessment from Plaintiff's prior credit on the account, leaves a credit of $338.95 left on the account.

47. On August 1, 2016, the $289.85 regular assessment came due.

48. Although Plaintiff had a credit to cover the assessment, the Creditor assessed a $25.00 late fee.

49. Because Plaintiff had a sufficient credit, this late fee should not have been charged.

50. Subtracting the August 1 assessment from Plaintiff's prior credit on the account, leaves a credit of $49.10 left on the account.

51. On September 15, 2016, Plaintiff made a payment of $315.00 on the account.

52. Subtracting the September assessment, leaves Plaintiff with a credit of $74.25 on the account.

53. Plaintiff did not make a payment on the Debt in October, 2016, and therefore taking the $289.85 assessment plus the $25.00 late fee charged, leaves Plaintiff owing $240.60 on the Debt as of October 30, 2016.

54. On November 7, 2016, Plaintiff made a payment of $946.00 on the Debt to get caught up.

55. Because Plaintiff was caught up before November 15, there should not have been a $25.00 late fee charged.

56. As of November 15, 2016, the correct balance of the account should have been a credit of $415.55 in Plaintiff's favor.

57. On November 21, 2016, Plaintiff made another payment on the Debt, in the amount of $290.00.

58.    This leaves Plaintiff with a credit of $705.55 on the account.

59.    On December 1, 2016, the $289.85 regular assessment came due.

60.    Subtracting the December 1 assessment from Plaintiff's prior credit on the account, leaves a credit of $415.70 left on the account.

61.    On January 1, 2017, the $289.85 regular assessment came due.

62.    Although Plaintiff had a credit to cover the assessment, the Creditor assessed a $50.00 late fee.

63.    Presumably, this was meant to be two $25.00 late fees for both this month and the previous month, since Plaintiff did not make a payment in December 2016 or January 2017.

64.    Because Plaintiff had a sufficient credit to cover both months' assessments, this late fee should not have been charged.

65.    Subtracting the January 1 assessment from Plaintiff's prior credit on the account, leaves a credit of $128.85 left on the account.

66.    On February 1, 2017, Plaintiff made a payment of $315.00 on the Debt.

67.    Because payment was timely made, no late fee should have been charged.

68.    Yet, the Creditor assessed a $25.00 late fee on the Debt for the month of February 2017.

69.    On March 1, 2017, Plaintiff made a payment of $315.00 on the Debt.

70.    This left Plaintiff with a credit of $176.15 on the account.

71.    On March 31, 2017, Plaintiff made a payment of $255.64 on the Debt.

72.    This left Plaintiff with a credit of $431.79 on the account.

73.    On April 3, 2017, Plaintiff made a payment of $314.00 on the Debt.

74.    This left Plaintiff with a credit of $455.94 on the account.

75. On May 1, 2017, the $289.85 regular assessment came due.

76. Although Plaintiff had a credit to cover the assessment, the Creditor assessed a $25.00 late fee.

77. Because Plaintiff had a sufficient credit, this late fee should not have been charged.

78. Subtracting the May 1 assessment from Plaintiff's prior credit on the account, leaves a credit of $481.09 left on the account.

79. On June 1, 2017, the $289.85 regular assessment came due.

80. Although Plaintiff had a credit to cover the assessment, the Creditor assessed a $25.00 late fee.

81. Because Plaintiff had a sufficient credit, this late fee should not have been charged.

82. On June 29, 2017, Plaintiff made a payment of $315.00 on the account.

83. This left Plaintiff with a $506.24 credit on the account.

84. On July 1, 2017, the $289.85 regular assessment came due.

85. Although Plaintiff had a credit to cover the assessment, the Creditor assessed a $25.00 late fee.

86. Because Plaintiff had a sufficient credit, this late fee should not have been charged.

87. Subtracting the July 1 assessment from Plaintiff's prior credit on the account, leaves a credit of $216.39 left on the account.

88. On August 1, 2017, Plaintiff made a payment of $315.00 on the account.

89.     Subtracting the August 1, 2017 regular assessment, leaves Plaintiff with a credit of $241.54 on the account.

90.     On September 1, 2017, the regular monthly assessment came due.

91.     Plaintiff did not make a payment in September, and therefore a $25.00 late fee was charged.

92.     This left Plaintiff with a balance owing of $73.31 on the Debt as of September 30, 2017.

93.     On October 1, 2017, the regular monthly assessment of $289.85 came due.

94.     Therefore, as of October 5, 2017, the correct balance of the Debt was $363.16.

95.     In connection with the collection of the Debt, Defendant sent Plaintiff a letter dated October 5, 2017.

96.     A true and correct copy of Defendant's October 5, 2017 letter to Plaintiff is attached to this complaint as Exhibit A.

97.     Defendant's October 5, 2017 letter represented that Plaintiff was in default on the Debt and that the balance Plaintiff owed was $2,115.87.

98.     On October 7, 2017, Plaintiff sent Defendant a payment of $739.00 to be applied to the Debt.

99.     However, Defendant refused to accept Plaintiff's payment.

100.    Instead, Defendant inexplicably returned the payment to Plaintiff.

101.    As a result, late fees and attorney fees were charged to Plaintiff's account during October 2017.

102.    These fees were inappropriately charged to Plaintiff's account, given that she was not behind to the extent that Defendant claimed, and she promptly attempted to make a payment to cover the debt and then some.

103.    Had Defendant accepted the $739.00 payment, Plaintiff would have been left with a credit of $375.84 on the account.

104.    Given that the payment was not applied to the assessment, the correct balance of the account was instead $363.16 owing.

105.    On October 30, 2017, Plaintiff sent Defendant another payment in the amount of $315.00.

106.    However, Defendant refused to accept this payment as well, and returned it to Plaintiff.

107.    When the November 1, 2017 regular assessment came due, if Defendant had accepted Plaintiff's payments, Plaintiff would have been left with a credit on the account of $400.99.

108.    Instead, another late charge was assessed on the account.

109.    Only because the payments Plaintiff sent were not applied to the account, as of November 30, 2017, the correct balance of the account was $653.01 owing.

110.    On November 24, 2017, Plaintiff sent Defendant a payment in the amount of $776.00.

111.    However, Defendant refused to accept this payment, and returned it to Plaintiff.

112.    When the December 1, 2017 regular assessment came due, if Defendant had accepted Plaintiff's payments, Plaintiff would have been left with a credit on the account of $887.14.

113.   On December 4, 2017, Plaintiff sent Defendant a payment in the amount of $290.00.

114.   However, Defendant refused to accept this payment, and returned it to Plaintiff.

115.   If Defendant had accepted Plaintiff's payments, Plaintiff would have been left with a credit on the account of $1,177.14.

116.   Instead, as of December 12, 2017, the correct balance of the account was $942.86 owing.

117.   Defendant sent Plaintiff a letter dated December 12, 2017.

118.   Defendant's December 12, 2017 letter represented that the balance of the Debt as of that date was $3,013.57.

119.   On January 1, 2018, the regular monthly assessment of $289.85 came due.

120.   Had Defendant accepted Plaintiff's payments, Plaintiff would have been left with a credit of $887.29.

121.   Instead, as of January 1, 2018, the correct balance of the account was $1,232.71.

122.   On January 29, 2018, Plaintiff sent Defendant a payment in the amount of $315.00.

123.   However, Defendant refused to accept this payment, and returned it to Plaintiff.

124.   On February 1, 2018, the regular monthly assessment of $289.85 came due.

125.   Had Defendant accepted Plaintiff's payments, Plaintiff would have been left with a credit of $912.44.

126.   Instead, as of February 1, 2018, the correct balance of the account was $1,522.56.

127.   On February 16, 2018, Plaintiff sent Defendant a payment in the amount of $315.00.

128.    However, Defendant refused to accept this payment, and returned it to Plaintiff.

129.    On March 1, 2018, the regular monthly assessment of $289.85 came due.

130.    Had Defendant accepted Plaintiff's payments, Plaintiff would have been left with a credit of $937.59.

131.    Instead, as of March 1, 2018, the correct balance of the account was $1,812.41.

132.    On March 19, 2018, Plaintiff sent Defendant a payment in the amount of $315.00.

133.    However, Defendant refused to accept this payment, and returned it to Plaintiff.

134.    On April 1, 2018, the regular monthly assessment of $289.85 came due.

135.    Had Defendant accepted Plaintiff's payments, Plaintiff would have been left with a credit of $647.74.

136.    Instead, as of April 1, 2018, the correct balance of the account was $2,102.26.

137.    On April 29, 2018, Plaintiff sent Defendant payments in the total amount of $3,090.00 to be applied to the Debt.

138.    This amount comprised a new cashier's check for $315.00 dated April 21, 2018, as well as the previous cashier's checks going back to October 7, 2017 detailed above (except the December 4, 2017 check, which was inadvertently not included).

139.    Even though it was more than she felt she owed, Plaintiff paid this higher amount due to Defendant's representations that the amount of the Debt was higher.

140.    Plaintiff felt coerced into paying the higher balance also because she because she wanted to submit an application for candidacy on the board of the Creditor, and in years past there seemed to always be an issue related to assessments or fines that the Creditor would use to invalidate Plaintiff's candidacy.

141.    After Plaintiff received Defendant's October 5, 2017 letter, she sent Defendant an email to dispute the amount of the Debt in writing.

142.    Defendant responded by sending Plaintiff a letter dated November 14, 2017.

143.    In the November 14, 2017 letter to Plaintiff, Defendant represented that Plaintiff owed $2,430.72 as of November 1, 2017.

144.    Plaintiff subsequently retained the undersigned counsel to, among other things, dispute the Debt with Defendant.

145.    On December 15, 2017, Plaintiff's counsel reached out to Defendant to point out certain areas of dispute.

146.    Defendant responded, claiming that Plaintiff owed $3,013.57 as of December 18, 2017.

147.    On or about July 11, 2017, the Creditor sent Plaintiff a letter stating that she would be charged a $600.00 fine for allegedly failing to have or provide proof of homeowner's insurance.

148.    The Creditor's July 11, 2017 letter stated that if Plaintiff provided proof of coverage, then the fine would be waived.

149.    On or about July 19, 2017, the Creditor assessed the $600.00 fine to Plaintiff for allegedly failing to have or provide proof of homeowner's insurance.

150.    Plaintiff had provided the Creditor with proof of insurance on several occasions.

151.    On November 14, 2017, Plaintiff's insurer provided Plaintiff with an updated letter attesting to her insurance coverage, and that her policy was in effect from March 25, 2015 up to and including November 14, 2017.

152.    Plaintiff's counsel provided this letter to Defendant on February 7, 2018.

153.    Defendant would eventually correct the ledger to reverse the $600.00 fine on or about March 20, 2018.

154.    On February 7, 2018, Plaintiff's counsel wrote a very detailed email to Defendant, going through the past balance of the Debt in substantially the same minutiae as presented in this complaint.

155.    Defendant responded on March 27, 2018, and claimed that the balance of the Debt owed was $3,589.01 as of March 20, 2018.

156.    Plaintiff's counsel responded again referencing the prior dispute, the majority of which went unaddressed.

157.    On April 3, 2018, Defendant replied, and enclosed a different ledger, this time claiming that the balance of the Debt owed was $2,997.23 as of March 20, 2018.

158.    However, this representation, like Defendant's others, was false, because as of March 20, 2018, Plaintiff would have owed no more than $1,887.41.

159.    When Plaintiff made her $3,090.00 payment on the Debt, she overpaid by no less than $912.74.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692e(2)(A)

160.    Plaintiff repeats and re-alleges each factual allegation above.

161.    The FDCPA creates a broad, flexible prohibition against the use of misleading, deceptive, or false representations in the collection of debts. *See* 15 U.S.C. § 1692e; *Hamilton v. United Healthcare of Louisiana, Inc*., 310 F.3d 385, 392 (5th Cir. 2002) (citing legislative history reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed").

162.    Included as an example of conduct that violates section 1692e is the false representation of the character, amount, or legal status of a debt. 15 U.S.C. § 1692e(2)(A).

163.    Thus, the plain-language of the FDCPA makes it clear that under the strict liability framework, any false representation as to the amount of the debt is sufficient to show a violation of the FDCPA. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period."); *see also Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("under § 1692e ignorance is no excuse").

164.    Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of Plaintiff's alleged Debt.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)    Adjudging that Defendant violated 15 U.S.C. § 1692e(2)(A);

b)    Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)    Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)    Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e)    Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

f)    Awarding such other and further relief as the Court may deem proper.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1692e(10)

165.    Plaintiff repeats and re-alleges each factual allegation above.

166.     Congress, recognizing that it would be impossible to foresee every type of deceptive collection misbehavior, expressly included in the FDCPA a catchall provision, prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).

167.     The FDCPA is intended to be "comprehensive, in order to limit the opportunities for debt collectors to evade the under-lying legislative intention," and therefore the same conduct may violate multiple sections of the Act.  *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006) (citing FTC Official Staff Commentary on FDCPA, 53 Fed. Reg. 50097, 50101).

168.     Defendant violated 15 U.S.C. § 1692e(10) by using false, deceptive, or misleading representations or means in connection with the collection of Plaintiff's Debt.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)   Adjudging that Defendant violated 15 U.S.C. § 1692e(10);

b)   Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)   Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)   Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e)   Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

f)   Awarding such other and further relief as the Court may deem proper.

**TRIAL BY JURY**

169.    Plaintiff is entitled to and hereby demands a trial by jury.

Dated: May 23, 2018.

Respectfully submitted,

s/Joseph Panvini
Joseph Panvini
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave D106-618
Mesa, AZ 85206
(602) 388-8875
(866) 317-2674 fax
jpanvini@thompsonconsumerlaw.com
Attorney for Plaintiff